UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | Case No. 03-10323 (MFW) |
| KEY3MEDIA GROUP, INC., et al.,[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| KEY3MEDIA GROUP, INC., | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | Civ. No. 05-828 (SLR) |
| v. | ) | |
| | ) | |
| PULVER.COM, INC.; PULVER.COM EUROPE, LTD.; PULVER.COM ASIA, LTD.; PULVER.COM CONFERENCES, INC. and JEFFREY PULVER, | ) | |
| | ) | |
| Appellee, | ) | |
| and | ) | |
| | ) | |
| MEDIALIVE INTERNATIONAL, INC. f/k/a Key3Media Group, Inc., | ) | |
| | ) | |
| Third Party Appellee. | ) | |

<u>OPENING BRIEF OF APPELLANTS, INTERFACE GROUP-MASSACHUSETTS, LLC, INTERFACE GROUP-NEVADA, INC. and VENETIAN CASINO RESORT, LLC</u>

**CONFIDENTIAL – FILED UNDER SEAL
SUBJECT TO A CONFIDENTIALITY AGREEMENT**

[SIGNATURE PAGE TO FOLLOW]

---

[1] The Debtors are Key3Media Group, Inc., Key3Media Events, Inc., Key3Media VON Events, Inc., Key3Media BCR Events, Inc., Key3Media Advertising, Inc. and Key3Media BioSec Corp.

Charles J. Brown III (No. 3368)
ELZUFON, AUSTIN, REARDON,
TARLOV & MONDELL, P.A.
300 Delaware Avenue
Suite 1700
P.O. Box 1630
Wilmington, DE 19899-1630

and

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
Leslie F. Su (Mass BBO#641833)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 261-0100

Attorneys for Appellants, Interface Group-Massachusetts, LLC, Interface Group-Nevada, LLC d/b/a Sands Expo and Convention Center and Venetian Casino Resort, LLC

April 17, 2006

**REDACTED**

Table of Contents

Table of Authorities.................................................................................................. i

I.   Statement of the Basis for Appellate Jurisdiction ....................................................1

II.  State of the Issues and Applicable Standard of Review...........................................1

    A.  Statement of the Issues ...................................................................................1

    B.  Standard of Review ........................................................................................2

III. Statement of the Case ...............................................................................................2

    A.  Nature of the Case ..........................................................................................2

    B.  Statement of the Facts....................................................................................3

IV.  Summary of the Argument ......................................................................................5

V.   Argument..................................................................................................................5

    A.  The Bankruptcy Court failed to make an independent factual inquiry...........5

    B.  The Bankruptcy Court's Assessment of the Relevant Factors in Approving a Compromise Relied Upon Facts Not Established By the Record ........................................................................................................7

VI.  Conclusion..............................................................................................................12

Table of Authorities

Cases

Brown v. Pennsylvania State Employees Credit Union
851 F.2d 81 (3d Cir.1988)..................................................................................................2

In re Federal Mogul-Global, Inc.
348 F. 3d 390 (3d Cir. 2003)..............................................................................................6

GTE Prods. Corp. v. Kennametal, Inc.
772 F.Supp. 907 (W.D.VA 1991).......................................................................................7

Knowles v. Putterbaugh (In re Hallet)
33 B.R. 564 (Bankr. D. Me. 1983)......................................................................................6

In re Marples
266 B.R. 202 (Bankr. D. Idaho 2001)................................................................................12

In re Marvel Entertainment Group, Inc.
222 B.R. 243 (D. Del. 1998)...............................................................................................6

Morrissey v. William Morrow & Co.
739 F.2d 962 (4th Cir. 1984)..............................................................................................7

In re Nelson Co.
959 F.2d 1260 (3d Cir. 1992).............................................................................................2

Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson
390 U.S 414, 88 S. Ct. 1157 (1968)...................................................................................5

In re Resorts Int'l, Inc.
145 B.R. 412 (Bankr. D.N.J. 1990)...................................................................................10

United States v. Jewel
947 F.2d 224 (7th Cir. 1991)..............................................................................................7

United States v. Rose
104 F.3d 1408 (1st Cir. 1997)............................................................................................6

In re Woodson
839 F.2d 610 (9th Cir. 1988)..............................................................................................7

In re W.T. Grant Company
699 F.2d 599 (2d Cir. 1983) .......... 10, 11

Statutes

11 U.S.C. § 548(a)(1)(B) .......... 7

28 U.S.C. §158(a) .......... 1

Rules

Bankruptcy Rule 8013 .......... 2

Fed. R. Civ. P. 30(b)(6) .......... 4

I.   Statement of the Basis for Appellate Jurisdiction

1.   This is an appeal from an Order of the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") dated October 7, 2005. (D.I. 42, 43).[2] The Bankruptcy Court entered a Memorandum of Opinion and Order Granting Motion for Order Approving Settlement between Debtors and Avoidance Defendants. (D.I. 42; A 28-A 43).[3] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §158(a).

II.   Statement of the Issues and Applicable Standard of Review

A.   Statement of the Issues

1.   Whether the Bankruptcy Court erred in granting the Motion for Order Approving Settlement Between the Debtors and Avoidance Defendants.

2.   Whether the Bankruptcy Court erred in finding that the Debtors' likelihood of success in the fraudulent transfer litigation against the Avoidance Defendants was low in light of the fact that the Debtors had sold their assets for approximately $37,127,000.00 less than the Debtors' purchase price of the same assets and in light of the fact that neither party had conducted any discovery in the adversary proceeding.

3.   Whether the Bankruptcy Court erred in finding that there were likely difficulties in collection of a judgment against the Avoidance Defendants absent any evidence to support such a finding.

4.   Whether the Bankruptcy Court erred in finding that the litigation would be complex and costly by relying on the parties' bare assertion of potential litigation costs.

---

[2] References to D.I. are to the docket for Adversary Proceeding No. 04-57972 (RB). References to D.I. (MC) are to the docket for the main bankruptcy case, Case No. 03-10323 (JWV).
[3] The Memorandum of Opinion and Order Granting Motion for Order Approving Settlement between Debtors and Avoidance Defendants is included in the Appellants' Appendix, at pages A 28 through A 43.

1

<u>5.</u>     Whether the Bankruptcy Court erred in finding that the proposed settlement is in the paramount interest of the Debtors' creditors.

B.    <u>Standard Of Review</u>

The District Court may affirm, modify or reverse a Bankruptcy Court's judgment, order or decree or remand with instructions for further proceedings. <u>See</u> Bankruptcy Rule 8013. The Bankruptcy Court's decisions with respect to questions of law are subject to plenary review. <u>In re Nelson Co.</u>, 959 F.2d 1260 (3d Cir. 1992). The findings of fact made by the Bankruptcy Court may be reversed only for clear error. <u>Id.</u> (citing <u>Brown v. Pennsylvania State Employees Credit Union</u>, 851 F.2d 81, 84 (3d Cir.1988)).

### III.    Statement of the Case

A.    <u>Nature of the Case</u>

On February 3, 2003 (the "Petition Date"), Key3Media Group, Inc. et al. (collectively the "Debtors") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). (D.I. (MC) 1). On June 6, 2003, the Court entered an order confirming the First Amended Joint Plan of Reorganization pursuant to which the Creditor Representative, Alix Partners, ("Creditor Representative") received authority to direct the prosecution of avoidance actions brought in the Chapter 11 case. (D.I. (MC) 496). On December 17, 2004, the Creditor Representative, on behalf of the bankruptcy estate, filed a complaint (the "Fraudulent Transfer Action") to avoid and recover fraudulent transfers against the defendants Pulver.com, Inc, Pulver.com Europe, LTD., Pulver.com Asia LTD., Pulver.com Conferences, Inc. and Jeffrey Pulver (collectively "Defendants"). (D.I. 1, 7). On January 19, 2005, a first amended complaint was filed. (D.I. 8, 9). An answer to the Amended Complaint was filed on January 24, 2005. (D.I. 9). On February 2, 2005 a Third-Party Complaint was brought against MediaLive International, Inc.

("MediaLive"), the reorganized successor to the Debtors. (D.I. 11). MediaLive entered into successive stipulations on April 1, 2005 and May 5, 2005 to extend the time within which it had to respond to the Complaint. (D.I. 16, 18). On June 13, 2005, the Debtors and the Creditor Representative filed a Motion to Approve a compromise settling the Fraudulent Transfer Action. (D.I. 19). Interface Group-Massachusetts, LLC, Interface Group-Nevada, Inc. and Venetian Casino Resort, LLC (collectively "Interface") filed an objection to the proposed compromise. (D.I. 20, 21). Interface is the holder of approximately $10 million in unsecured claims against the bankruptcy estate. (D.I. 20). The Court conducted a hearing on the motion to compromise and the objection on August 25, 2005. (D.I. 38). On October 7, 2005, the Court entered an order approving the compromise. (D.I. 42, 43). Interface timely filed a Notice of Appeal. (D.I. 46).

B.    Statement of the Facts

The Debtors purchased a group of assets, consisting of the business assets of Pulver.com from the Defendants for $41.5 million in cash in September of 2001. Sixteen months later, and two weeks before filing for bankruptcy, the Debtors sold those same assets back to the Defendants for $4.375 million. While the initial transaction had a closing date of September 10, 2001, the actual price was not finally determined by the parties until August 22, 2002. (D.I. 11, at ¶ 16). After setting the final purchase price of $41.5 million in August, 2002, the Debtors proceeded to negotiate the sale back of the same assets in November, 2002, two months after the finalization of the initial transaction. (D.I. 11, at ¶ 22).


REDACTED

REDACTED

       In January, 2003, some two weeks before the commencement of their Chapter 11 case, the Debtors sold back to the Defendants essentially the same assets it had purchased for $41.5 million, for the amount of $4.375 million.

       Interface conducted a deposition of the Debtors pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure on May 28, 2003.

REDACTED

---

[4] Exhibit A to the Supplement to Objection of Interface Creditors to Motion of Creditor Representative for Order Approving Settlement (Pulver Claims) (D.I. 34) was filed under seal. The Knepper Depo. is included in the Appellants'

REDACTED

The Court approved the Debtors' motion to compromise the claims against the Defendants for the amount of $1,150,000, and overruled the objection of Interface (hereinafter "Decision"). (D.I. 42; A 28-A 43).

### IV.     Summary Of The Argument

The Bankruptcy Court took no evidence in this matter, other than receiving the deposition transcript of Peter Knepper, the Debtor's former chief financial officer.

REDACTED

The Bankruptcy Court had before it, the sworn testimony of the Debtors' Chief Financial Officer, and the unsupported oral arguments of the Debtors. The Bankruptcy Court improperly relied on the oral arguments and failed to credit the sworn testimony. While the Bankruptcy Court has a substantial amount of discretion in reviewing any proposed compromise, and this Court's review is properly limited to determining whether the Bankruptcy Court abused its discretion; in this case, the Bankruptcy Court did abuse its discretion by failing to make, and consider, the required independent factual inquiry.

### V.     Argument

A.     <u>The Bankruptcy Court failed to make an independent factual inquiry.</u>

The Bankruptcy Court reviews a proposed compromise to provide an "informed independent judgment" that the compromise is fair. <u>Protective Committee for Independent</u>

---

Appendix, at pages A 1 through A 27.
[5] As the Bankruptcy Court referred to the proponents of the settlement as the "Debtors," the Appellants adopt that reference hereinafter, intending to refer collectively to the moving parties in doing so. See D.I. 42, Decision, A 31, at p. 4 and passim.

Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157 (1968). In doing so, the Court must apprise itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." Id. The Debtors, as the proponents of the compromise, have the burden of showing that the settlement terms are in the best interest of the bankruptcy estate. Knowles v. Putterbaugh (In re Hallet), 33 B.R. 564, 565-66 (Bankr. D. Me. 1983).

In order for the Bankruptcy Court to apprise itself of the relevant facts, it was necessary that the Bankruptcy Court make an "independent" factual inquiry. In the instant case that "inquiry" was limited to the oral arguments of counsel. There was no means for the Bankruptcy Court to provide an "objective opinion" because the Debtors failed to offer any evidence for the Court to examine. This standard contrasts markedly with hallmark of a true independent analysis. In In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998), the District Court approved a compromise and, in doing so, detailed the supporting evidence offered by the proponents of the compromise:

> Gibbons submitted <u>a report to the court describing his investigation</u> and explaining his conclusions. Second, it appears that, even without the Settlement, Gibbons would support the Toy Biz reorganization plan. <u>He testified</u> about his attempts to solicit outside bids for the Debtors. <u>He offered the testimony</u> of a financial advisor from Houlihan Lokey, William Peluchiwski, who was involved in these solicitation efforts. <u>They both testified</u> that they had only received offers from one bidding group--the Icahn interests--and that they considered the Toy Biz plan to be a better deal for the Debtors' creditors than the Icahn offer. Chase, one of the Secured Lenders, <u>also offered testimony</u> from one of its employees, Susan Atkins. <u>Atkins testified</u> that Chase had evaluated the Icahn offer, and had concluded that the Toy Biz plan would potentially provide a greater return to the Secured Lenders.

Id. at 250 (emphasis added). The marked lack of evidence in this proceeding led the Bankruptcy Court to make, and rely upon, factual findings which were supported by nothing more than oral argument. "[I]t is well settled that arguments by counsel cannot provide factual support for a trial

6

court's findings." In re Federal Mogul-Global, Inc. 348 F. 3d 390 (3d Cir. 2003) (citing United States v. Rose, 104 F.3d 1408, 1416 (1st Cir.1997) ("[A]rgument by counsel is not evidence.")); United States v. Jewel, 947 F.2d 224, 230 (7th Cir.1991); Morrissey v. William Morrow & Co., 739 F.2d 962, 967 (4th Cir.1984); GTE Prods. Corp. v. Kennametal, Inc., 772 F.Supp. 907, 917 (W.D.Va.1991). The Debtors had the burden of proof to show that the proposed compromise was in the best interest of the estate. The Debtors failed to provide any evidence by which the Bankruptcy Court could determine that it met that burden.

B.  The Bankruptcy Court's Assessment of the Relevant Factors in Approving a Compromise Relied Upon Facts Not Established by the Record.

The four factors involved in evaluating a proposed settlement are:

    a. The probability of success in the litigation;

    b. The difficulty, if any, to be encountered in the matter of collection;

    c. The complexity of the litigation involved; and

    d. The paramount interest of creditors and a proper deference to their reasonable views.

In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988) The Bankruptcy Court's analysis of these factors was flawed by its resolution of factual conflicts based upon the arguments of counsel and its failure to credit the one piece of evidence submitted by any party, the sworn testimony of the Debtors' Chief Financial Officer, Peter Knepper. This lack of factual support was especially glaring given the fact that the litigation which the Debtors sought to compromise had never proceeded beyond the stage of filing the complaint. There was no discovery taken at all, and no results or report of any factual investigation which would support the decision to settle.

    i.  Probability of Success. Section 548 of the Bankruptcy Code provides for the recovery of transfers made within one year before the date of filing of a petition, if the Debtors

7

received less than reasonably equivalent value in exchange for the transfer and were insolvent on the date such transfer was made. 11 U.S.C. § 548(a)(1)(B). In this matter, the Debtors sold assets for $4.375 million, two weeks before they filed a petition for relief under the Bankruptcy Code.

REDACTED

The Bankruptcy Court notes that the Debtors vehemently deny the existence of this agreement, citing in support the Debtors' reply memorandum. (D.I. 42, Decision, A 37, at p. 10.) The Bankruptcy Court does nothing to reconcile the oral argument of the Debtors with the conflicting sworn testimony of its Chief Financial Officer. Further, the Bankruptcy Court proceeds to note the Debtors' contention that: "the January, 2003 sale price was negotiated after being unsuccessful in its attempts to find an alternative buyer, despite the use of investment bankers to attract interest." Id. Yet, the only testimony offered in this regard was Mr. Knepper's deposition.

REDACTED

It strains credulity for the Bankruptcy Court to conclude that there was any attempt to find other buyers or that investment bankers were employed to sell the asset, without conducting any valuation of the asset and without the knowledge of the Chief Financial Officer. Those conclusions are wholly unsupported by the record and rest only upon the arguments of counsel.

The Bankruptcy Court went on to observe that "The Debtors strongly argue that they engaged in significant due diligence prior to both transactions. (D.I. 42, Decision, A 38, at p. 11). That assertion was uncontroverted by any party in interest, including the Interface Creditors." (D.I. 42, Decision, A 38, at p. 11.) This is simply wrong. The Interface Creditors submitted Mr. Knepper's deposition testimony and at oral argument called the Court's attention to the relevant portions of the testimony. (D.I. 40, at p. 7, ll. 20-25).

REDACTED

The Bankruptcy Court's statement that "The Debtors employed investment bankers to market the Pulver assets," (D.I. 42, Decision, A 40, at p. 13), is belied by the deposition testimony of the Debtors Chief Financial Officer and supported by nothing more than oral argument. Even absent Mr. Knepper's unambiguous statements to the contrary, the Debtors failure to offer even any documentary evidence that any investment banker had ever evaluated the asset would be reason enough to question the existence of such alleged involvement; if known for nothing else, the

9

investment banking community has a prodigious ability to generate reports, and other tangible evidence of their involvement.

The Bankruptcy Court's ultimate finding that probability of success in the litigation which the Debtors sought to compromise was "low," (D.I. 42, Decision, A 40, at p. 13) was based upon a series of factual findings that were wholly unsupported, and indeed directly contradicted by, the record before the Court.

ii. <u>Difficulty of Collection</u>. The Bankruptcy Court correctly observed that the Debtors' arguments that the ability of the Defendants to make payment on any judgment was questionable was "without evidentiary support." (D.I. 42, Decision, A 41, at p. 14).

iii. <u>Complexity, cost of the litigation</u>. The cost and complexity of litigation increase in corresponding measure with the amounts at issue. The amounts at issue in the litigation which the Debtors sought to compromise are admittedly several million dollars. The Creditor Representative argued that the cost could easily exceed $500,000. One court has accurately observed that "[L]itigation and delay are always the alternative to settlement, but whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of the litigation." <u>In re Resorts Int'l, Inc.</u>, 145 B.R. 412, 452 (Bankr. D.N.J. 1990) It is that very "reasoned judgment" which is missing in the instant case. As acknowledged by the Bankruptcy Court (D.I. 42, Decision, A 41, at p. 14), Interface offered to take on the litigation on a contingent fee basis, using the current settlement offer as a base from which to judge the success of any future efforts. (D.I. 20, p. 5, fn 2)

Even absent such an offer, however, the prospect of litigation costs are meaningless unless evaluated in light of a range of reasonable outcomes. In <u>In re W.T. Grant Company</u>, 699 F.2d 599 (2d Cir. 1983) the Court of Appeals reviewed the appeal of a settlement agreement entered into

between a bankruptcy trustee and certain debenture holders. The Court determined that the most favorable outcome for the objecting debenture holders was 43 cents on the dollar. The Court found that a settlement which afforded the debenture holders 19 cents on the dollar was within the range of reasonableness. Id. at 614. The Grant case is often cited by settlement proponents for the holding that to be approved a settlement need only be of a value not less than the "lowest point in the range of reasonableness." Id. at 613. The case is instructive for the degree of implied quantitative analysis involved. In order for the Court to make a determination that a proposed settlement falls someplace within the "range of reasonableness" it must first determine what that range is. In the instant case, the gross difference between the sale price of the assets purchased by the Debtors as finally determined in August, 2002, $41.5 million, and the consideration the Debtors received when they sold those same assets back to the seller immediately before the bankruptcy filing in January, 2003, $4.375 million, was $37,125,000. Deducting from this potential recovery the Debtors' estimate of fees of $500,000, leaves a maximum net potential recovery of $36,625,000. Applying only a 10% chance of recovery to this amount would yield a settlement value of over $3 million. In the instant case, after no discovery or investigation, the Debtors propose to compromise for $1,150,000, or approximately 3.1 % of the total amount at stake.

The Bankruptcy Court made no independent factual inquiry and no reasoned analysis of the range of likely outcomes, making any reliance on the cost of the litigation misplaced and without an appropriate context.

    iv.    <u>The Interest of Creditors</u>. The Bankruptcy Court acknowledged the status of the Interface Creditors as the largest independent claimholders and noted that it was giving appropriate deference to its objection. (D.I. 42, Decision, A 42, at p. 15). The Bankruptcy Court, however, then weighed the Interface objection against the silence of certain secured lenders. In doing so the

11

Bankruptcy Court failed to take into account that those same secured lenders hold an equity interest in the reorganized debtor which is a third party defendant in these proceedings. More importantly, the Bankruptcy Court gave equal weight to the objection of Interface and the failure to object or respond of the formerly secured lenders. In In re Marples, 266 B.R. 202 (Bankr. D. Idaho 2001) the Bankruptcy Court in reviewing a proposed settlement to which no objection had been made observed that the deference required by this standard is "best viewed as being owed to creditors who express their views. Little if any "proper deference" need be given silence." Id. at 207.

## VI.     Conclusion

The Bankruptcy Court failed to make an independent factual inquiry of the relevant factors in approving the compromise proposed by the Debtors and the Creditor Representative. The facts relied upon by the Bankruptcy Court were unsupported by anything other than the arguments of counsel and, accordingly, did not support the Bankruptcy Court's determination that the Debtors and Creditor Representative met their burden of proof in showing that the proposed settlement terms were in the best interest of the bankruptcy estate.

Wherefore, the Appellants pray that the Court reverse the Order of the Bankruptcy Court dated October 7, 2005 granting the Motion For Order Approving Settlement and that the Court grant such other and further relief as is just.

Dated: April 17, 2006
Wilmington, Delaware

ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.

_____
Charles J. Brown, III (Bar No. 3368)
300 Delaware Avenue, Suite 1700
Wilmington, DE 19899-1630
(302) 428-3181

-and-

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
Leslie F. Su (Mass BBO#641833)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110

Attorneys for Appellants, Interface Group-Massachusetts, LLC, Interface Group-Nevada, LLC d/b/a Sands Expo and Convention Center and Venetian Casino Resort, LLC

P:\Clients\Las Vegas Sands\Key3Media\Plead\Pulver\Appellants Brief 041206.doc

## CERTIFICATE OF SERVICE

I, Charles J. Brown, III, certify that I am not less than 18 years of age, and that service of the foregoing was made via first class mail to the following parties on April 17, 2006, upon:

Laura Davis Jones, Esquire
Paula A. Galbraith, Esquire
Pachulski, Stang, Ziehl, Young & Jones & Weintraub P.C.
919 North Market Street, 16th Floor
Wilmington, DE 19899-8705

Andrew W. Caine, Esquire
Pachulski, Stang Ziehl, Young, Jones & Weintraub P.C.
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, CA 90067

John H. Knight, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19801

Dated: April 17, 2006

Charles J. Brown, III (No. 3368)