UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KEY3MEDIA GROUP, INC., et al.,[1]<br><br>                Debtors. | Chapter 11<br>Case No. 03-10323 (JWV)<br><br>Jointly Administered |
| KEY3MEDIA GROUP, INC.,<br><br>                Appellee,<br><br>v.<br><br>PULVER.COM, INC.; PULVER.COM EUROPE, LTD.; PULVER.COM ASIA, LTD.; PULVER.COM CONFERENCES, INC. and JEFFREY PULVER,<br><br>                Appellees,<br><br>  and<br><br>MEDIALIVE INTERNATIONAL, INC. f/k/a Key3Media Group, Inc.,<br><br>                Third Party Appellee. | Civ. No. 05-828 (SLR) |

**REPLY BRIEF OF APPELLANTS, INTERFACE GROUP-MASSACHUSETTS, LLC, INTERFACE GROUP-NEVADA, INC. and VENETIAN CASINO RESORT, LLC**

**CONFIDENTIAL – FILED UNDER SEAL
SUBJECT TO A CONFIDENTIALITY AGREEMENT**

[SIGNATURE PAGE TO FOLLOW]

---

[1] The Debtors are Key3Media Group, Inc., Key3Media Events, Inc., Key3Media VON Events, Inc., Key3Media BCR Events, Inc., Key3Media Advertising, Inc. and Key3Media BioSec Corp.

Charles J. Brown, III (No. 3368)
ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.
300 Delaware Avenue
Suite 1700
P.O. Box 1630
Wilmington, Delaware 19899-1630
(302) 428-3181

and

Stephen F. Gordon (Mass BBO#203600)
Peter J. Haley (Mass BBO#543858)
Leslie F. Su (Mass BBO#641833)
Gordon Haley LLP
101 Federal Street
Boston, Massachusetts 02110
(617) 261-0100

Attorneys for Appellants, Interface Group-Massachusetts, LLC, Interface Group-Nevada, LLC d/b/a Sands Expo and Convention Center and Venetian Casino Resort, LLC

Dated: May 31, 2006

## Table of Contents

Table of Authorities ........................................................................................ ii

I.  Reply ............................................................................................................ 1

    A.  The correct standard of review was identified in the Opening Brief of the Interface Creditors .................................................... 1

    B.  The Bankruptcy Court could not have made an informed and independent judgment that the proposed settlement was fair based on the unsupported allegations presented by the Debtors ........ 1

    C.  The Bankruptcy Court's finding that the Debtors received the market price for the Pulver assets was not based on any evidence .......................................................................................... 3

    D.  The circumstances under which the Debtors sold the Pulver assets evidence that the assets were not sold for fair value ............................................................................................... 5

    E.  The Bankruptcy Court found that the Debtors' argument on the issue of likely difficulties in collection was without evidentiary support ...................................................................... 6

    F.  The Debtors did not address the issue of the expense of litigation ........ 6

    G.  The Interface Creditors did not waive their right to argue that the Debtors' evidence in support of the Motion was insufficient ................ 7

II. Conclusion .................................................................................................. 8

Certificate of Service ................................................................................... 9

# Table of Authorities

## Cases

<u>In re Jasmine, Ltd.</u>,
    258 B.R. 119 (D. N.J. 2000) .................................................................................. 6

<u>In re Martin</u>,
    91 F.3d 389 (3d Cir. 1996) .................................................................................... 6

<u>Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v.
Anderson (In re TMT Trailer Ferry, Inc.)</u>,
    390 U.S 414, 88 S.Ct. 1157 (1968) ................................................................ 1, 2, 6

<u>Will v. Northwestern Univ. (In re Nutraquest, Inc.)</u>,
    434 F.3d 639 (3d Cir. 2006) .................................................................................. 7

<u>Woodson v. Fireman's Fund Ins. Co.</u>,
    839 F.2d 610 (9th Cir. 1988) ................................................................................. 1

## Rules

Bankruptcy Rule 8009 .................................................................................................... 1

D. Del. LR 7.1.3 ............................................................................................................. 1

I.  Reply

Pursuant to Bankruptcy Rule 8009, D. Del. LR. 7.1.3 and this Court's Order dated March 16, 2006, Interface Group-Massachusetts, LLC, Interface Group-Nevada, Inc. and Venetian Casino Resort, LLC (collectively, the "Interface Creditors") submit this brief in reply to the Appellees' Responsive Brief.

A.  The correct standard of review was identified in the Opening Brief of the Interface Creditors.

In response to the statement of the Debtors that the Interface Creditors failed to identify the appropriate standard of review, the Interface Creditors refer the Court and the Debtors to Sections II.B and IV of the Opening Brief of Appellants, Interface Group-Massachusetts, LLC, Interface Group-Nevada, Inc. and Venetian Casino Resort, LLC ("Opening Brief"), which stated, "[t]he findings of fact made by the Bankruptcy Court may be reversed only for clear error," and that "this Court's review is properly limited to determining whether the Bankruptcy Court abused its discretion; in this case, the Bankruptcy Court did abuse it discretion by failing to make, and consider, the required independent factual inquiry." Opening Brief, at pp. 2, 5.

B.  The Bankruptcy Court could not have made an informed and independent judgment that the proposed settlement was fair based on the unsupported allegations presented by the Debtors.

Although it is within a bankruptcy court's discretion to approve a compromise, the court's discretion is not unlimited and the court may only approve a compromise if it is "fair and equitable." See Woodson v. Fireman's Fund Ins. Co., 839 F.2d. 610, 620 (9th Cir. 1988). There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until a bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In

1

re TMT Trailer Ferry, Inc.), 390 U.S. 414, 424, 88 S.Ct. 1157, 1164 (1968). To make an informed and independent judgment, a bankruptcy court needs facts, not allegations. Id., 390 U.S. at 437, 88 S.Ct. at 1170. A reviewing court must have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant facts, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law. Id., 390 U.S. at 434, 88 S.Ct. at 1168.

In this case, the Debtors failed to present any facts to the Bankruptcy Court in support of the Motion for Order Approving Settlement Between the Debtors and Avoidance Defendants (the "Motion"). In their Motion, the Debtors' analysis of the four factors to be considered by the Bankruptcy Court and the circumstances surrounding the proposed settlement consisted of exactly one page of boilerplate language that would be equally applicable to any motion to compromise filed with a bankruptcy court. (See D.I. 19, at p. 7). The Debtors offered only allegations unsupported by any documentary or testimony, which, according to TMT Trailer Ferry, were insufficient to serve as the basis for the Bankruptcy Court's determination that the proposed settlement was fair and equitable.

The Debtors' argument is a generic argument; settlements are favored and the factors to be considered in approving a settlement call for the application of the Court's discretion in evaluating those factors. The Interface Creditors are not opposed to settlement and not opposed to a settlement of this litigation; however, they are opposed to the particular settlement submitted by the Debtors and approved by the Bankruptcy Court in this instance. They are opposed to the proposed settlement because it is unsupported by the facts in this case and is not in the best interest of creditors. The Debtors did not provide the Bankruptcy Court with any evidence which would support the settlement and are left now to make ad hominem arguments and complain that

they were entitled to some additional warning or notice if they were expected to meet their burden of presenting evidence that would support the settlement.

C.  The Bankruptcy Court's finding that the Debtors received the market price for the Pulver assets was not based on any evidence.

In its Memorandum of Opinion and Order, the Bankruptcy Court concluded, "[t]here is persuasive evidence to support the Debtors' claim that they received market price for the Pulver assets. The Debtors employed investment bankers to market the Pulver assets." (D.I. 42, **A 40**, at p. 13). A review of the Motion hearing transcript establishes that there were no facts before the Bankruptcy Court that could support such a finding.

REDACTED

To counter the testimony offer by the Interface Creditors, the Debtors offered the unsupported representations of its counsel. Other than the statements of its counsel, the Debtors failed to offer any evidence, documentary or testimonial, to establish that the Debtors, in fact, employed investment bankers to market the Pulver assets. The Bankruptcy Court's conclusion was based on allegations proffered by counsel for the Debtors who admittedly had "no knowledge" of any in-house or professional valuators of the assets and responded to the Bankruptcy Court's questions concerning the valuation of the assets as follows:

> THE COURT: Mr. Caine [counsel for the Debtors], you heard Mr. Haley [counsel for the Interface Creditors] comment that there was no outside consultancy with respect to valuation on the subject assets and that this was purely value done in an in-house basis through in-house personnel; is that correct to you [sic] knowledge?

3

> MR. CAINE: Your Honor, that is not correct <u>to my knowledge</u>, and that is not –
>
> THE COURT: What is your understanding in that regard?
>
> MR. CAINE: <u>My understanding</u>, Your Honor, and this is also set forth in the Pulver counterclaim, is that after deciding in September of 2002 they needed to sell the business, the debtors retained the [sic] Houlihan Lokey Howard & Zukin as investment bankers in order to attempt to sell the business. That Houlihan Lokey was unsuccessful in the finding a buyer for the business.

D.I. 40, at p. 27, ll. 2-17 (emphasis added).

> THE COURT: Does this surprise you? Even addressing the next comment to the 2001 sale, Mr. Caine, that someone be interested in acquiring assets without some valuation to a point of willing to pay $56 million? I understand $36 million was in cash, 20 million was to be escrowed based upon a performance or earn-out.
>
> MR. CAINE: Your Honor, <u>I wasn't there at the time</u>. The debtor apparently, according to Mr. Knepper, did conduct its due diligence in-house. <u>I don't know who they might have had in-house.</u>
>
> THE COURT: That was my next question. To your knowledge, are you aware of any of the in-house personnel or professional valuators of assets of this nature?
>
> MR. CAINE: <u>No, I have no knowledge of that</u>, Your Honor.

D.I. 40, at p. 29, ll. 8-22 (emphasis added).

The Bankruptcy Court's conclusion that the Debtors received market price for the Pulver assets is based on the foregoing exchange with counsel for the Debtors. The Debtors did not produce a witness with first-hand knowledge of the valuation of the assets or any documentary evidence to support the allegation that the Debtors employed an investment banker to assist in the sale of the Pulver assets. It is more likely the case that the Debtors could not produce any such evidence because the allegation that an investment banker was employed to assist in the sale of the Pulver assets is simply not true.

The purchase price for the Pulver assets paid by the Debtors was finalized in September, 2002 at $41,502,000. (Appellees' Responsive Brief, at p. 4). The sale back of the Pulver assets to the Debtors took place in January, 2003 for the amount of $4,375,000. (Id.) The Debtors argue that both prices reflect a consistent application of EBITDA multipliers. This statement can only be true if, during the four month interval, the EBITDA associated with the assets declined by a factor of ten. The Debtors offer no citation or evidence to support such an occurrence. Instead, the Debtors use different standards of measurement to argue that the valuations were consistent.

**REDACTED**

Even using the Debtors convenient memory (omitting the real EBITDA number for 2001, which would have formed the basis for the September, 2002 price adjustment) the corresponding sale back price **REDACTED**

Surely the fact that within four months the Debtors both agreed on a finalized purchase price of $41.5 million and on a sale back price for the very same assets of $4 million, suggests that what is at issue in the underlying litigation far exceeds the relatively nominal settlement value proposed by the Debtors. All of these facts remained unexamined by the Bankruptcy Court, which relied on a non-existent valuation by outside professionals.

D.   <u>The circumstances under which the Debtors sold the Pulver assets evidence that the assets were not sold for fair value.</u>

In their Responsive Brief, the Debtors state that "there is nothing shameful or wrong" about the Debtors' sale of the Pulver assets two weeks before the filing of the bankruptcy cases. The Interface Creditors have never argued that the last-minute sale of the Pulver assets was

"shameful or wrong."

# REDACTED

E.  **The Bankruptcy Court found that the Debtors' argument on the issue of likely difficulties in collection was without evidentiary support.**

With respect to the Debtors' argument that any judgment against Pulver would be difficult to collect, the Bankruptcy Court found, "This argument, however, is without evidentiary support." D.I. 42, at p. 14.

F.  **The Debtors did not address the issue of the expense of litigation.**

The Debtors allege that litigation of the fraudulent transfer claims would be expensive and take a long time; however, other than suggesting that the cost of litigation could exceed $500,000, the Debtors did not introduce any evidence or other analysis to support this estimate. A conclusion that the benefits of settlement outweigh the expense of litigation must be based upon an educated estimate of the complexity, expense and likely duration of the litigation. In re TMT Trailer Ferry, Inc., 390 U.S. at 425, 88 S.Ct. at 1164.

Furthermore, when faced with a motion to approve a compromise, a court must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. In re Jasmine, Ltd., 258 B.R. 119, 123 (D. N.J. 2000) (citing In re Martin, 91 F.3d 389, 393 (3d Cir. 1996)). In this case, the Bankruptcy Court could not balance the value of the fraudulent transfer claim against the value of the proposed compromise because the Pulver assets were never subject to valuation. Based on the facts before the Bankruptcy Court, one could conclude that the maximum recovery to the Debtors under the

fraudulent transfer claims was over $36 million (the net recovery). When comparing a potential $36 million claim against the proposed compromise of $1,150,000, the potential value of the claim outweighs the value of the proposed compromise and the Bankruptcy Court abused its discretion in finding otherwise.

In response to the Debtors' comment that, other than the Interface Creditors, no creditors objected to the settlement, this fact is merely noteworthy and not conclusive. Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 645 (3d Cir. 2006). The fact that most creditors in a three year old case with a projected three cent dividend fail to pay any attention to the case hardly stands as testament to the underlying sagacity of the Debtors settlement decisions.

G.   The Interface Creditors did not waive their right to argue that the Debtors' evidence in support of the Motion was insufficient.

In their Responsive Brief, the Debtors argue that the Interface Creditors never argued that the manner in which the Debtors made their showing was insufficient. Responsive Brief, at p. 17. It is undisputed that the Debtors, as the proponents of the compromise, had the burden of showing that the settlement terms were in the best interest of the bankruptcy estate. In the Objection to the Motion and at the hearing before the Court, the Interface Creditors consistently argued that the facts underlying the Debtors' fraudulent transfer claims had not been developed and that the Debtors failed to meet their burden. (See D.I. 20, at pp. 4-5; D.I. 40, at p. 17-18, ll. 23-18. In order to accept the Debtors' position that they may simply rely on the arguments of counsel (which are not evidence), to support a motion to approve a compromise, one must ignore the requirement that a court must apprise itself of all facts necessary for an intelligent and objective opinion on the fairness of the proposed compromise.

Furthermore, it is impossible for the Debtors or the Interface Creditors to waive the Debtors' burden of establishing that the proposed compromise with Pulver was in the best interest of the Debtors' estate. The Interface Creditors cannot be accused of "sandbagging" the Debtors by demanding that the Debtors present evidence in support of their Motion to compromise a claim that was potentially worth $36 million.

## II.   Conclusion

In light of the foregoing and the arguments set forth in their Opening Brief, the Appellants' pray that the Court reverse the Order of the Bankruptcy Court dated October 7, 2005 granting the Motion For Order Approving Settlement and that the Court grant such other and further relief as it deems just.

Dated: May 31, 2006  
Wilmington, Delaware

ELZUFON AUSTIN REARDON  
TARLOV & MONDELL, P.A.

*/s/ Charles J. Brown, III*  
Charles J. Brown, III (Bar No. 3368)  
300 Delaware Avenue, Suite 1700  
Wilmington, Delaware 19899-1630  
(302) 428-3181

and

Stephen F. Gordon (Mass BBO#203600)  
Peter J. Haley (Mass BBO#543858)  
Leslie F. Su (Mass BBO#641833)  
Gordon Haley LLP  
101 Federal Street  
Boston, Massachusetts 02110  
(617) 261-0100

Attorneys for Appellants, Interface Group-Massachusetts, LLC, Interface Group-Nevada, LLC d/b/a Sands Expo and Convention Center and Venetian Casino Resort, LLC

P:\Clients\Las Vegas Sands\Key3Media\Plead\Pulver\Reply brief.doc

## CERTIFICATE OF SERVICE

I, Charles J. Brown, III, certify that I am not less than 18 years of age, and that service of the foregoing was made via first class mail to the following parties on May 31, 2006 upon:

| | |
|---|---|
| Laura Davis Jones, Esquire<br>Paula A. Galbraith, Esquire<br>Pachulski, Stang, Ziehl,<br>Young, Jones & Weintraub, P.C.<br>919 North Market Street, 16th Floor<br>Wilmington, DE 19899-8705 | Elio Battista, Jr., Esquire<br>Mark J. Packel, Esquire<br>Blank Rome LLP<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801 |
| Andrew W. Caine, Esquire<br>Pachulski, Stang, Ziehl,<br>Young, Jones & Weintraub, P.C.<br>10100 Santa Monica Boulevard, Suite 1100<br>Los Angeles, CA 90067 | Bonnie Steingart, Esquire<br>Vivek Melwani, Esquire<br>Fried, Frank, Harris,<br>Shriver & Jacobson LLP<br>One New York Plaza<br>New York, NY 10004 |
| John H. Knight, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>Wilmington, DE 19801 | Robert M. Novick, Esquire<br>Kasowitz, Benson, Torres & Friedman LLP<br>1633 Broadway<br>New York, NY 10019 |

Dated: May 31, 2006

/s/ *Charles J. Brown, III*
Charles J. Brown, III (Bar No. 3368)