IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| KEY3MEDIA GROUP, INC., ) | |
| et al., ) | Bk. No. 03-10323(MFW) |
| ) | Jointly Administered |
| Debtors. ) | |
| | |
| KEY3MEDIA GROUP, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civ. No. 05-828-SLR |
| ) | Adv. No. 04-57972(RB) |
| PULVER.COM, INC., PULVER.COM, ) | |
| EUROPE, LTD., PULVER.COM ASIA ) | |
| LTD., PULVER.COM CONFERENCES, ) | |
| INC., and JEFFREY PULVER, ) | |
| ) | |
| Appellees, ) | |
| ) | |
| and ) | |
| ) | |
| MEDIALIVE INTERNATIONAL, INC. ) | |
| f/k/a Key3Media Group, Inc., ) | |
| ) | |
| Third party ) | |
| Appellee. ) | |

**MEMORANDUM ORDER**

At Wilmington this 2nd day of October, 2006, having reviewed the appeal filed by Interface Group-Massachusetts, LLC, Interface Group-Nevada, LLC and Venetian Casino Resort, LLC (the "Interface Creditors"), and the papers filed in connection therewith;

IT IS ORDERED that the appeal is denied and the decision of the bankruptcy court dated October 7, 2005 is affirmed, for the

reasons that follow.

1. **Standard of review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999). With mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. In re Hechinger, 298 F.3d 219, 224 (3d Cir. 2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir. 2002).

2. **Question presented.** Whether the bankruptcy court erred in approving the settlement reached by the parties to the above captioned adversary proceeding?

3.  **Background facts.**  On September 10, 2001, Key3Media Group, Inc. ("Key3Media"), at the time a leading producer, manager and promoter of tradeshows, conferences and other events for the information technology industry, entered into an asset purchase agreement ("the Agreement") whereby Key3Media purchased substantially all of the assets of Pulver.com, Inc., Pulver.com Europe, Ltd., Pulver.com Asia Pacific, Ltd. and Pulver.com Conferences, Inc. ("the Pulver assets").[1]  The Pulver assets consisted primarily of two brand events.  Key3Media paid $36 million for the Pulver assets on the closing date, with the remainder of the purchase price to be determined consistent with an "earn out" formula over time after an analysis of the events' earnings before interest, taxes, depreciation and amortization ("EBITDA").  Key3Media deposited $20,250,000 into escrow to secure the remainder of the purchase price.

4.  During the quarter ended September 30, 2002, the parties to the Agreement eliminated the price adjustment feature and, instead, calculated a final purchase price of $41,502,000; $16,005,000 of the $20,250,000 already deposited into escrow was distributed to Key3Media, with the remaining $4,245,000 going to the Pulver entities.  The total and final purchase price of $41,502,000 represented a value that could be calculated as 5.7

---

[1] These business entities were owned by Jeffrey Pulver ("Pulver entities").  (D.I. 7 at A18)

times EBITDA (which was slightly less than $7 million before the closing date). On January 24, 2003, the Pulver assets were sold back to Pulver for approximately $4,375,000. At the time of sale, Key3Media projected EBITDA from the assets was approximately $1 million.

5. On February 2, 2003, Key3Media and various of its affiliates (hereinafter "debtors") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. A joint plan of reorganization was confirmed on June 4, 2003 and became effective on June 20, 2003.

6. On December 17, 2004, the instant adversary proceeding was commenced by the "Creditor Representative on behalf of the Reorganized Debtors" to avoid two alleged fraudulent transfers: (a) the September 10, 2001 sale pursuant to which the debtors acquired the Pulver assets for a total purchase price of $41,502,000; and (b) the January 24, 2003 sale by which the debtors sold the assets back to Pulver for approximately $4,375,000. In essence, the suit alleged that the debtors paid too much in the first instance, and accepted too little in the latter instance.

7. The parties to the adversary proceeding engaged in a lengthy settlement process that ultimately resulted in a settlement of the litigation ("the Settlement"). The salient terms of the Settlement were: (a) Pulver agreed to pay

$1,150,000; (b) Pulver relinquished any claim to a dividend under 11 U.S.C. § 502(h); and (c) all parties released one another from any and all claims related to the Pulver transactions.[2] The Settlement was approved by the bankruptcy court, afer notice and a hearing, over the sole objection of the appellants at bar, the Interface Creditors.

8. **Analysis.** The court starts with the proposition that, "[t]o minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). Under Bankruptcy Rule 9019, a bankruptcy judge has the authority to approve a compromise of a claim, with due notice and a hearing. In evaluating a proposed compromise, the bankruptcy judge is tasked with balancing "the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Id. The Third Circuit has recognized four factors that should be considered in striking the appropriate balance: (a) "the probability of success in litigation;" (b) "the likely difficulties in collection;" (c) "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it;" and (d) "the paramount interest of the creditors." Id. Accord In re Nutraquest, 434 F.3d 639, 644 (3d

---

[2]In the adversary proceeding, Pulver had asserted, inter alia, counterclaims against Key3Media for breach of contract and indemnification.

Cir. 2006). It remains a court's duty to ensure that compromises are "'fair and equitable,' [as are] the 'other aspects of reorganizations.'. . . Under the 'fair and equitable standard, we look to the fairness of the settlement to other persons, i.e., the parties who did not settle." Id. (quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

9. It is evident from the record that the essential facts related to the underlying transactions were not in dispute, rather, how those facts operated within a legal context.[3] The record reviewed by the bankruptcy court included the deposition of Peter Knepper, the Chief Financial Officer of Key3Media (whose testimony was relied upon by all parties[4]), as well as the arguments made by the parties. Because the facts were known, the appellees were acting reasonably in arguing from the record. The Interface Creditors did not request the appointment of an independent examiner to review the merits of the litigation, nor did the Interface Creditors further supplement the record.

10. The bankruptcy court, acknowledging its "duty to make

---

[3]For instance, in support of their contention that the estate should pursue litigation rather than settle, the Interface Creditors argued that the "**circumstances** under which the Debtors sold the Pulver assets **evidence** that the assets were not sold for fair value." (D.I. 11 at i (emphasis added) and A31)

[4]See D.I. 11 at A18-21.

6

an informed, independent judgment that the compromise is fair and equitable," conducted the inquiry mandated by Third Circuit precedent. (D.I. 7 at A 35-43) The record created in connection with the hearing had sufficient information to support the bankruptcy court's conclusion that the Settlement fell within the reasonable range of litigation possibilities. The Interface Creditors, having had the opportunity to present evidence to the bankruptcy court or to make the specific objection that the record was insufficient in some particular regard, do not persuade this court on appeal that there was error in the bankruptcy court's legal analysis or the factual predicate for its analysis.

/s/ Sue L. Robinson
United States District Judge